# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| THE PURSUANT GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-cv-1559-O |
| | § | |
| PHILIP CAPPS, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER

Before the Court are Phillip Capps's Motion for Attorney's Fees and Appendix in Support (ECF Nos. 119-20), filed August 29, 2013; The Pursuant Group, Inc.'s Objections and Response to Capps's Motion for Attorney's Fees and Appendix in Support (ECF Nos. 121-22), filed August 29, 2013; and Philip Capps's Reply and Appendix in Support (ECF Nos. 125-26), filed September 6, 2013. Having considered the motion and the applicable law, the Court finds that the motion should be and is hereby **GRANTED in part**.

## I.      BACKGROUND

Philip Capps ("Capps") brought an action pursuant to 42 U.S.C. § 2000e, *et seq.*, alleging that The Pursuant Group, Inc. ("Pursuant") violated Title VII when it suspended and terminated him in retaliation for participating in protected activity. Capps sought back pay and front pay damages, compensatory damages, court costs, attorney's fees, and punitive damages. *See* Capps's Answer & Countercl. ¶ 51, ECF No. 6. The jury determined that Pursuant retaliated against Capps in violation of Title VII when it suspended and terminated him. Jury Verdict, ECF No. 97. The jury also found, however, that Pursuant did not fail to promote Capps or give him a pay raise because of his protected

activity.  *Id.*  The jury awarded Capps $70,000 in back pay, $25,000 in compensatory damages, and $100,000 in punitive damages; and the Court later awarded Capps $131,254.64 in front pay.  *Id.* at 11; Capps's Mot. Att'y Fees 6, ECF No. 119.  Pursuant moved for judgment as a matter of law, which was denied, but the Court limited Capps's damages award to the statutory cap of $100,000. *See* Order, Aug. 1, 2013, ECF No. 118.  On August 15, 2013, Capps, as a prevailing Title VII plaintiff, filed the instant motion for attorney's fees.  *See* Capps's Mot. Att'y Fees 6, ECF No. 119. The Motion for Attorney's Fees has been fully briefed and is ripe for determination.

## II.    LEGAL STANDARD

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses . . . ."  *Perdue v. Kenny A ex rel. Winn*, 559 U.S. 542, 550 (2010).  In Title VII cases, however, Section 2000e-5(k) authorizes district courts to apply attorney's fees and costs to a prevailing party.  *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) (citing 42 U.S.C. § 2000e-5(k)); *see also Dodge v. Hunt Petroleum Corp.*, 174 F. Supp. 2d 505, 508 (N.D. Tex. 2001).  Under Section 2000e-5(k), district courts may, in their discretion, "allow the prevailing party . . . a reasonable attorney's fee . . . ."  42 U.S.C. § 2000e-5(k).

The Fifth Circuit employs a two-step process when determining an award of attorney's fees. *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010) (citing *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 192 (5th Cir. 1999)).  The first step is the lodestar calculation, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work."  *Id.*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).  In evaluating the reasonableness of the number of hours expended, courts determine "whether the total hours claimed are reasonable [and]

also whether particular hours claimed were reasonably expended." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995) (quoting *Alberti v. Klevenhagen*, 896 F.2d 927, 932 (5th Cir. 1990), *modified on other grounds*, 903 F.2d 352 (5th Cir. 1990)). Any duplicative, excessive, or inadequately documented time should be excluded from the lodestar calculation. *Jimenez*, 621 F.3d at 379-80. In ascertaining the compensable time, courts determine the appropriate hourly rate based on the prevailing community standards for attorneys of similar experience in similar cases. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). The burden is on the applicant to establish the reasonableness of the award. *See Dodge*, 174 F. Supp. 2d at 508 (citing *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996); *La. Power & Light Co.*, 50 F.3d at 324; *In re Smith*, 966 F.2d 973, 978 (5th Cir. 1992)).

After calculating the lodestar, the court may adjust the award based on the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *See Jimenez*, 621 F.3d at 380. To adjust the award, the district court must "articulate and clearly apply the *Johnson* criteria." *Dodge*, 174 F. Supp. 2d at 508; *see also Jimenez*, 621 F.3d at 380 (quoting *Perdue*, 559 U.S. at 558) (noting district courts must provide "a reasonably specific explanation for all aspects of a fee determination"). Applying these standards, the Court now considers Capps's motion.

## III.   ANALYSIS

Capps requests $390,813.85 in attorney's fees. Capps's Mot. Att'y Fees 5, ECF No. 119. The fees are divided among attorneys Justin L. Jeter ("Jeter"), Mark Donheiser ("Donheiser"), and Jonathan Boos ("Boos"); paralegals Julie Bayless ("Bayless") and Joy Whitney ("Whitney"); and law student Anh Tran ("Tran"). *See generally id.*; *see also* App. Supp. Capps' Mot. Att'y Fees 3-5, ECF No. 120.

### A.      Lodestar Calculation

To calculate the lodestar, the Court multiplies the reasonable number of hours expended and the reasonable hourly rate. *Jimenez*, 621 F.3d at 379-80; *Dodge*, 174 F. Supp. 2d at 508. The Court begins its analysis by addressing the reasonable number of hours expended.

#### 1.      Reasonable Number of Hours Expended

To calculate the reasonable number of hours expended, the Court must determine whether the total hours claimed are reasonable and whether the particular hours claimed were reasonably expended. *League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) (citing *La. Power & Light Co.*, 50 F.3d at 324; *Alberti*, 896 F.2d at 933-34). The applicant bears the burden of establishing a reasonable number of hours expended and proving that billing judgment was exercised. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.*; *see also League of Latin Am. Citizens*, 119 F.3d at 1232 (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).

Capps contends that his legal team reasonably expended 1,245.28 hours.[1] Capps's Mot. Att'y Fees 5, ECF No. 119. He asserts that his legal team exercised billing judgment based on a number of factors, such as the extensive discovery conducted by the parties and "the changing landscape of 'retaliation' jurisprudence during this case."[2] *See id.* at 9-12. Pursuant argues that Capps failed to

---

[1] Capps states that his legal team actually expended 1,348.8 hours, but voluntarily reduced paralegal hours by 30% and attorney hours by 15% for "potentially 'vague' entries." Capps's Mot. Att'y Fees 5, ECF No. 119. Therefore, Capps is claiming 1,245.28 hours. *Id.*

[2] The other factors Capps relied on to show that billing judgment was exercised include the amount of time spent conducting depositions and written discovery; responding to Pursuant's discovery requests; responding to numerous "time-consuming motions" filed by Pursuant; distributing work "appropriately and

exercise billing judgment and requests that the Court reduce Capps's hours because of "extensive" block billing and vague entries and Capps's unreliable billing records. *See* Pursuant's Reply at 2-6, ECF No. 121. Pursuant requests four categories of reductions: (1) 10% reduction for failing to exercise billing judgment; (2) elimination of added or altered hours and an additional 20% reduction for unreliable billing records; (3) 20% reduction for block billing; and (4) 10% reduction for vague entries. *See generally id.*

a.    *Billing Judgment*

To establish that billing judgment was exercised, Capps must provide documentation of the hours charged and hours written off as "unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799; *see also Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) (noting burden is on plaintiff to show he exercised billing judgment). Capps's billing records show that his legal team expended 1,348.8 hours of billable work, but did not record any non-billable hours or write off any hours during the litigation. *See* App. Supp. Capps's Mot. Att'y Fees Ex. 2 (Billing Records), App. 17-71, ECF No. 120. The only adjustments made by Capps were the voluntary reductions offered in the instant motion for paralegals and "potentially vague" entries. *See* Capps's Mot. Att'y Fees 5, ECF No. 119.

Capps argues that the Fifth Circuit has not created a "contemporaneous documentation requirement," Capps's Reply 2, ECF No. 125, but the Fifth Circuit has ruled that a district court may reduce an award based on the moving party's failure to "indicat[e] time written off as excessive or

---

efficiently;" voluntarily reducing time spent by paralegals and "potentially 'vague' time entries" for his attorneys; and conducting significant legal research, specifically in light of the Fifth Circuit's opinion in *Carter v. Luminant*, 714 F.3d 268 (5th Cir. 2013), which was decided a month before trial in this case. Capps's Mot. Att'y Fees 9-13, ECF No. 119.

unproductive" in their records.  *See Saizan*, 448 F.3d at 800; *see also Walker*, 99 F.3d at 769 n.9 (quoting *Alberti*, 896 F.2d at 930) ("Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but also hours written off.") (internal quotation marks omitted); *La. Power & Light Co.*, 50 F.3d at 324 (stating courts "customarily require the applicant to produce contemporaneous billing records or other sufficient documentation"); *Leroy v. City of Hous.*, 831 F.2d 576, 585 n.15 (5th Cir. 1987) (noting plaintiff's billing records were "completely devoid of any hours written off"); *Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 865 (S.D. Tex. 2011) (finding plaintiff exercised billing judgment because records showed that attorneys wrote off entries that were redundant); *Glass v. United States*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004) (stating "the preferred method for a party seeking attorney's fees is to produce contemporaneous billing statements or time records").   The Court finds that the absence of reductions or documentation of hours written off as excessive or unproductive during the litigation indicates a lack of billing judgment.   However, the Court does not find it appropriate to impose a 10% reduction based on this deficiency because Capps established other ways in which his legal team exercised billing judgment.  *See* Capps's Mot. Att'y Fees 8-15, ECF No. 119.  Accordingly, the Court reduces Capps' total fee by 5%.  *See Saizan*, 448 F.3d at 799 (stating courts should reduce the award "by a percentage intended to substitute for the exercise of billing judgment" when moving party omits evidence of billing judgment).

> b.      *Block Billing and Vague Entries*

Pursuant also requests that the Court reduce the hours claimed by Jeter, Capps's lead trial counsel, by 30% for block billing and vague entries.  Pursuant's Resp. 4-6, ECF No. 121 (requesting 20% reduction for block billing and 10% reduction for vague entries).  "'Block billing' is a 'time-

6

keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Humphrey*, 802 F. Supp. 2d at 864 n.23 (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1534 n.15 (10th Cir. 1996); *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-cv-0752-D, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011); *Glass*, 335 F. Supp. 2d at 739). Block billing prevents courts from accurately determining the numbers of hours spent on a particular task, thus "impair[ing] the required reasonableness evaluation." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, No. 3:09-cv-1596-D, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) (quoting *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-cv-0913-D, 2005 WL 6789456, at *4 (N.D. Tex. Dec. 20, 2005), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007)) (internal quotation marks omitted); *see also La. Power & Light Co.*, 50 F.3d at 324 ("[D]ocumentation must be sufficient for the court to verify that the applicant has met its burden."). However, "[a] reduction for block billing is not automatic." *Humphrey*, 802 F. Supp. 2d at 865 (internal quotation marks omitted).

The Court finds that a large number of Jeter's entries include multiple tasks within the same entry, rather than itemized entries explaining the amount of time spent on each task. Pursuant directs the Court to block billing throughout Capps's billing records, including over one-hundred entries for two hours or more that contain block billing.[3]   *See* App. Supp. Pursuant's Resp. Ex. 3 (Billing

---

[3] *See, e.g.*, App. Supp. Pursuant's Resp. Ex. 3 (Billing Records), App. at 35, ECF No. 122-1 (6.50 hours: "Telephone conference with Philip Capps; attention to research regarding various claims; begin preparing Answer, Counterclaim, and discovery requests."); *id.* at 37 (7.30 hours: "Attention to the Court's order; review and respond to correspondence from opposing counsel; begin researching and preparing deposition list; telephone conference with Philip Capps; begin preparing case plan and initial discovery; attention to Pursuant's allegations."); *id.* at 51 (7.60 hours: "Continue preparing detailed demand letter; telephone conference with mediator; telephone conference with opposing counsel; attention to Stowers issue; continue researching damages issue."); *id.* at 55 (9.8 hours: "Telephone conference with Philip Capps; finish preparing and file Response to Motion for Summary Judgment.").

Records), App. 34-74, ECF No. 122-1 (marking block-billing entries with "BB"); *see also Bramlett*, 2010 WL 3294248, at *3-4.  Capps does not address Pursuant's contentions regarding the reduction for block billing.  *See generally* Capps's Reply, ECF No. 125.  Therefore, the Court reduces Jeter's hours by 20%.

Courts may also reduce or eliminate the numbers of hours awarded if the documentation is "too vague to permit meaningful review." *La. Power & Light Co.*, 50 F.3d at 326 (describing courts that reduced or eliminated hours for entries that were "vague as to precisely what was done," for records that were "completely missing . . . or lacking in explanatory detail," and for entries such as "legal research" and "trial preparation") (internal quotation marks omitted).  "Bare descriptions, without any reference to content or purpose, do not demonstrate that the services were necessary and that the amount of time expended was reasonable." *Humphrey*, 802 F. Supp. 2d at 865 n.25 (quoting *Fralick*, 2011 WL 487754, at *10) (internal quotation marks omitted).  Pursuant notes that Jeter's records include the phrase "attention to" seventy-five times and entries such as "[r]eview and respond to correspondence" and "[p]repare for and attend scheduling meeting."  Pursuant's Resp. 5-6, ECF No. 121; *see also* App. Supp. Pursuant's Resp. Ex. 3 (Billing Records), App. 34-74, ECF No. 122-1 (marking vague entries with "V").  Pursuant requests a 10% reduction in Jeter's time for these vague entries.  Pursuant's Resp. 6, ECF No. 121.

The Court agrees that some of Jeter's entries are vague, however, the Court does not find an additional 10% reduction warranted.  The entries marked by Pursuant are "not so vague or unilluminating that they preclude[] meaningful review." *League of United Latin Am. Citizens*, 119 F.3d at 1233.  The Court finds that most of the entries sufficiently identify the legal issues and tasks performed by counsel.  *See id.* (quoting *La. Power & Light Co.*, 50 F.3d at 327) (noting courts should

be "mindful that practical considerations of the daily practice of law . . . preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour") (internal quotation marks omitted); *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Housing & Cmty. Affairs*, No. 3:08-cv-0546-D, 2013 WL 598390, at *5 (N.D. Tex. Feb. 15, 2013) (finding entries were not vague because they "describe[d] the subject matter of the task"); *Humphrey*, 802 F. Supp. 2d at 865 (finding entries were not vague because counsel "adequately identif[ied] the particular legal issue, document, purpose of telephone calls and conferences, or service for which they [we]re billing"). In spite of the potentially vague entries, Capps's records allow the Court to conduct a meaningful review of the reasonableness of the hours claimed, and therefore, a 10% reduction is not warranted.

c.      *Altered or Added Entries*

Pursuant also argues that Capps's billing records are "altered and not reliable" and requests that the Court eliminate added or altered hours and reduce the hours claimed by 20%. *See* Pursuant's Resp. 2-4, ECF No. 121. Pursuant directs the Court's attention to differences in Capps's billing records disclosed on January 10, 2013 ("January Records"), and those submitted with the instant motion on August 15, 2013 ("Motion Records"). *Id.* at 2. The January Records and Motion Records both covered May 14, 2012, through December 14, 2012, however, the Motion Records contain an additional 68.50 hours for Jeter. *Id.* at 2-3; *see also* App. Supp. Pursuant's Resp. Ex. 1 (January Records), App. 5-28, ECF No. 122-1; App. Supp. Pursuant's Resp. Ex. 3 (Motion Records), App. 34-74, ECF No. 122-1 (circling and denoting added hours with asterisks); App. Supp. Pursuant's Resp. Ex. 8 (Jeter's Added Entries), App. at 183, ECF No. 122-1. There is also an additional 2.40 hours for Donheiser that was added between the January Records and disclosure of billing records

9

on June 7, 2013.  Pursuant Resp. 3, ECF No. 121; *see also* App. Supp. Pursuant's Resp. Ex. 1 (January Records), App. 5-28, ECF No. 122-1; App. Supp. Pursuant's Resp. Ex. 3 (Motion Records), App. 34-74, ECF No. 122-1 (circling and denoting added hours with asterisks); App. Supp. Pursuant's Resp. Ex. 9 (Donheiser's Added Entries), App. at 185, ECF No. 122-1.  Fourteen of these hours concern Capps's motion for summary judgment, which was filed on November 13, 2012, but the entries are dated after November 13, 2012.  *See* Pursuant's Resp. 4, ECF No. 121 (noting entries dated November 16, 2012 (.70 hours for Donheiser), November 21, 2012 (6.20 hours for Jeter), and December 5, 2012 (7.10 hours for Jeter)).

Pursuant argues that these additions or alterations "cast doubt on the reliability of Capps'[s] billing records as a whole."  *Id.*  Capps contends that the entries related to the motion for summary judgment were a "small mistake" and attributes the 68.50 hours to human error and delays in the computer program that tracks billing records.  Capps's Reply 4-7, ECF No. 125.  Pursuant relies on *Barrow v. Greenville Independent School District* to support its contention that the Court should reduce Capps' hours by 20%.  *See* Pursuant's Resp. 4, ECF No. 121.  The Court finds this case distinguishable from *Barrow*.  In *Barrow,* Chief Judge Fitzwater found that the billing records were unreliable because the records, if accurate, showed that the attorney had worked "continuously, without taking any days off, and that on no day did he bill fewer than 12.5 hours," and billed, on average, 16.7 hours each day.  2005 WL 6789456, at *8.  Chief Judge Fitzwater stated that the "scale of the errors" in the records, totaling over 1,000 hours, "call[ed] into question" the accuracy of the entire fee application.  *Id.* at *7, *9.  Here, Capps's attorneys have a total of 70.90 hours that were added or altered.  *See* Pursuant's Resp. 3-4, ECF No. 121 (noting 68.50 hours for Jeter and 2.40 hours for Donheiser).  While the additions or alterations indicate that errors in billing were made,

10

they are not significant enough to warrant a 20% reduction in Capps's hours.  The Court finds that it would be reasonable to eliminate the 68.50 hours for Jeter and 2.40 hours for Donheiser, and not impose an additional reduction based on these errors.[4]

The Court is mindful that billing records must be sufficient to allow the courts to conduct a "meaningful review" of whether the hours were reasonably expended, *League of United Latin Am. Citizens*, 119 F.3d at 1233, but attorneys are not required to "describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *La. Power & Light Co.*, 50 F.3d at 327.  Therefore, after considering the billing records, the Court finds the following reductions warranted: (1) a 5% reduction in the total fee award for the failure to exercise billing judgment; (2) a 20% reduction in Jeter's hours for block billing; and (3) the elimination of added or altered hours for Jeter and Donheiser.

---

[4] Capps requests that the Court deduct the 14 hours that were added after the motion for summary judgment was filed with the Court.  Capps's Reply 5, ECF No. 125; *see also* Pursuant's Resp. 4, ECF No. 121 (stating that .70 hours for Donheiser were added after November 13, 2012, and 13.30 hours were added for Jeter after November 13, 2012).  Capps also states that excluding the 68.50 hours "appears reasonable," although he does not agree with it.  Capps's Reply 6, ECF No. 125.

Accordingly, the adjusted totals for the reasonable hours expended are:

| Attorney or Paralegal | Original Hours[5] | Hours After Voluntary Reduction[6] | Added or Altered Hours | Adjusted Total | Block Billing (20%) | Adjusted Total Hours |
|---|---|---|---|---|---|---|
| Jeter | 914.90 | 886.20 | 68.50 | 817.70 | 163.50 | 654.20 |
| Donheiser | 67.60 | 67.60 | 2.40 | 65.20 | - | 65.20 |
| Boos | 111.10 | 107.80 | - | 107.80 | - | 107.80 |
| Bayless | 238.20 | 166.70 | - | 166.70 | - | 166.70 |
| Whitney | .90 | .60 | - | .60 | - | .60 |
| Tran | 16.10 | 16.10 | - | 16.10 | - | 16.10 |
| **Total** | | | | | | **1,010.60** |

2.    Reasonable Hourly Rate

The prevailing market rates for similar work in the relevant community determine the reasonable hourly rate, *McClain*, 649 F.3d at 381, therefore, the Court will look to the prevailing market rates in Dallas.  *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) ("[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district sits.") (internal quotation marks omitted).  Capps requested $335.00 per hour for Jeter, $435.00 per hour for Donheiser, $215.00 per hour for Boos, $160.00 per hour for Bayless, $180.00 per hour for Whitney, and $75.00 per hour for Tran.  Capps's Mot. Att'y Fees 5, ECF No. 119; App. Supp. Capps's Mot. Att'y Fees 4-5, ECF No. 120.  The burden is on Capps to produce sufficient evidence that the requested rates are in line with the prevailing rates in Dallas for

---

[5] Capps's billing records, attached as Exhibit 2 in his Appendix, list the total hours expended during the litigation for his legal team.  *See* App. Supp. Capps's Mot. Att'y Fees Ex. 2 (Billing Records), App. at 71, ECF No. 120.

[6]  The voluntary reductions for paralegal time and "vague" entries are documented in Capps's motion.  *See* Capps's Mot. Att'y Fees 14, ECF No. 119.

12

similar services by attorneys of "reasonably comparable skill, experience and reputation."  *See McClain*, 649 F.3d at 381(citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  Generally, the reasonable hourly rate is established through affidavits submitted by other attorneys practicing in the community.  *Tollett*, 285 F.3d at 368 (citing *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993)); *see also Miller v. Raytheon Co.*, 716 F.3d 138, 149 (5th Cir. 2013) (noting requested rates were supported by affidavits from attorneys from attorneys' firm and outside attorney).  An applicant may also establish reasonableness by directing the district court to fee awards in the same district.  *See Inclusive Cmtys. Project, Inc.*, 2013 WL 598390, at *6 (citing *Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cnty.*, 752 F.2d 1063, 1073 (5th Cir. 1985)); *Richardson v. Tex-Tube Co.*, 843 F. Supp. 2d 699, 709 (S.D. Tex. 2012).

Capps offers the affidavits of Jeter, Donheiser, and Boos, and relies on cases from the Northern District of Texas to establish that the requested rates are reasonable.  Capps's Mot. Att'y Fees 16-17, ECF No. 119;  App. Supp. Capps's Mot. Att'y Fees, App. 3-10, 72-78, ECF No. 120. The record shows that Jeter has practiced law for thirteen years, focusing exclusively on civil litigation, and $350.00 per hour is his normal hourly rate.  App. Supp. Capps's Mot. Att'y Fees 4, ECF No. 120.  Donheiser has practiced law since 1983 and is certified in civil appellate law and asserts that his rate of $435.00 per hour is "reasonable and consistent" with the prevailing rates in Dallas.  *Id.* at 72-74.  Boos was admitted to practice in 2009 and has devoted his practice to civil litigation and states that $215.00 per hour is reasonable.  *Id.* at 76-77.  Bayless has been a paralegal for twenty-six years and Whitney has been a paralegal for over thirty years, and Jeter states that their requested rates of $160.00 per hour and $180.00 per hour, respectively, are reasonable.  *Id.* at 4. Tran is a third-year law student and Jeter asserts that her rate of $75.00 per hour is reasonable.  *Id.*

at 4-5. Donheiser and Boos do not include information on their customary hourly rates.

Conversely, Pursuant suggests that $275.00 per hour for Jeter, $350.00 per hour for Donheiser, $175.00 per hour for Boos, and $75.00 per hour for Bayless, Whitney, and Tran are reasonable hourly rates. Pursuant's Resp. 7-8, ECF No. 121. Pursuant argues that its proposed rates are "more in line" with the 2011 State Bar of Texas survey, which provides the median hourly rates for categories of attorneys throughout the State.[7] *Id.*; App. Supp. Pursuant's Resp. Ex. 6 (State Bar Survey), App. 144-157, ECF No. 122-1. Pursuant also provides the affidavit of its own attorney, Stephen Key, to show that its proposed rates are reasonable. App. Supp. Pursuant's Resp. Ex. 5 (Key Affidavit), App. 139-142, ECF No. 122-1.

After reviewing the record, the Court finds that Capps has not presented sufficient evidence to establish the reasonableness of the requested rates. Capps submitted affidavits from his legal team, but failed to submit affidavits from other attorneys in the community. *See Tollett*, 285 F.3d at 368 (noting reasonable rate is generally established through affidavits from other attorneys). While not fatal, the absence of affidavits from other attorneys limits the Court's ability to determine the reasonableness of the rates. *See id.* at 368-69 (allowing affidavits from applicant's attorneys because defendant did not challenge requested rate); *Inclusive Cmtys. Project, Inc.*, 2013 WL 598390, at *6 (citing *Wheeler*, 752 F.2d at 1073) (finding plaintiff met its burden without affidavits from other attorneys by including declaration from its attorney and directing court to fee awards in

---

[7] The survey found that the median hourly rate for labor and employment attorneys in Dallas-Fort Worth was $259. App. Supp. Pursuant's Resp. Ex. 6 (State Bar Survey); App. at 153, ECF No. 122-1. The survey found that in Dallas-Fort Worth, $284 was the median hourly rate for attorneys with over 25 years of experience, $240 was the median hourly rate for attorneys with 11-15 years of experience, and $199 was the median hourly rate for attorneys with 3-6 years of experience. *Id.* at 155. Additionally, the median hourly rate for attorneys at a firm with 6-10 attorneys in the Dallas-Fort Worth area is $259. *Id.* at 157.

the relevant district court); *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, No. 3:08-cv-1337-B, 2010 WL 3000877, at *5 (N.D. Tex. July 27, 2010), *vacated and remanded by*, No. 11-10338, 2013 WL 3943554 (5th Cir. Aug. 1, 2013) (stating failure to include affidavits from other attorneys "is not necessarily fatal," but affidavits from other attorneys are helpful); *Old Republican Ins. Co. v. Stafford*, No. 3:03-cv-1611, 2005 WL 2026853, at *2 (N.D. Tex. Aug. 22, 2005) (noting applicant must produce "satisfactory evidence, in addition to his attorneys' affidavits, that the requested rate is consistent with prevailing market rates"). Pursuant presented evidence that Capps's requested rates are not reasonable and are above the median rates in Dallas. *See* App. Supp. Pursuant's Resp. Ex. 5 (Key Affidavit), App. 139-142, ECF No. 122-1; *id.* Ex. 6 (State Bar Survey), App. 145-157, ECF No. 122-1; *see also Miller*, 716 F.3d at 149 (noting district court's consideration of state bar surveys, attorney's fees in similar cases, and skills of attorneys to determine reasonable rate). Furthermore, the Court does not find persuasive the cases cited by Capps.[8]

The requested rates must be in line with fees charged for similar services by attorneys with

---

[8] Capps cites *Nassar* to support his requested rates, but Judge Boyle stated that her decision did not imply that the rates awarded were "typical or will be routinely accepted." *Nassar*, 2010 WL 3000877, at *5. Judge Boyle found that the record and the "specific facts of this case" supported the reasonableness of the rates. *Id.* at *4-5 (discussing evidence, such as attorneys' customary rates and affidavits, and noting defendant failed to offer evidence of appropriate rate). Capps also cites *Fluor Corp. v. Citadel Equity Fund Ltd.*, No. 3:08-cv-1556-B, 2011 WL 3820704, at *5 (N.D. Tex. Aug. 26, 2011), to argue that Texas courts have found hourly rates between $220 and $510 to be reasonable. Capps's Mot. Att'y Fees 16-17, ECF No. 119. However, the cases cited in *Fluor Corp.* were not from the Northern District of Texas, and the Court must look to the prevailing rates in this district to determine the reasonableness of the rates. *See Flour Corp.*, 2011 WL 3820704, at *5 (citing cases from the Eastern District of Texas, Southern District of Texas, Eastern District of Louisiana, and Southern District of Illinois). *But see Miller v. Raytheon Co.*, 716 F.3d at 149 (citing *Fluor* in finding that rates set by district court were reasonable and customary). The opinion in *Fluor Corp.* also noted that the attorneys worked at "one of the largest and most established law firms in Texas" and were "highly qualified." *Flour Corp.*, 2011 WL 3820704, at *4. Finally, Capps cites *Black v. SettlePou, P.C.*, No. 3:10-cv-1418-K, 2012 WL 3638681, at *3-4 (N.D. Tex. Aug. 24, 2012), *vacated and remanded by*, 732 F.3d 492 (5th Cir. 2013). The court in *Black*, however, did not discuss the evidence presented that permitted the court to determine that the hourly rates were reasonable. *See id.* at *2-4; *see also Black*, 732 F.3d at 502 ("The district court's finding that the lodestar was reasonable is not at issue in this appeal.").

"reasonably comparable" skill, experience, and reputation, *McClain*, 649 F.3d at 381, but Capps does not present evidence of the skill, experience, or reputation of his legal team, other than noting how long they have been practicing.[9] *See Inclusive Cmtys. Project*, 2013 WL 598390, at *6 (noting rates were reasonable because attorneys had "extensive experience in civil rights litigation"); *Flour Corp.*, 2011 WL 3820704, at *4 (noting attorneys worked at "one of the largest and most established law firms" and were "highly qualified"); *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *16 (finding attorneys that did not focus their practice on civil rights litigation did not "provide similar services" to the attorneys in the case); *see also Flour Corp.*, 2011 WL 3820704, at *5 (discussing cases finding rates reasonable for attorneys who performed "premium work" or who had "specialized qualifications"); *Barrow*, 2005 WL 6789456, at *16 (noting specialist in civil rights and labor and employment litigation stated reasonable hourly rates in the Northern District of Texas range between $250 and $350). Capps has not presented sufficient evidence for the Court to find that the requested rates are in line with rates charged by attorneys with similar experience, skill, and reputation in Dallas.

Based on the foregoing, the Court finds that a 10% reduction in Capps's legal team's hourly rates is warranted. The reduction accounts for the attorneys' experience and the prevailing rates in Dallas. *See also Perdue*, 559 U.S. at 551 (noting that lodestar method provides an award that "roughly approximates" the fee received by a prevailing attorney in a comparable case); App. Supp. Pursuant's Resp. Ex. 6 (State Bar Survey), App. 145-157, ECF No. 122-1. Accordingly, the Court

---

[9] Jeter states that he has practiced for thirteen years, devotes his practice entirely to civil litigation, and was named a "Top Young Lawyer[]" three times. App. Supp. Capps's Mot. Att'y Fees 4, ECF No. 120. Donheiser has practiced law for over thirty years and is certified in civil appellate law. *Id.* at 72-73. Boos has practiced law for four years and devotes his practice to civil litigation. *Id.* at 76-77.

finds the reasonable hourly rates for Capps's legal team to be: (a) $315.00 per hour for Jeter; (b) $391.50 per hour for Donheiser; (c) $193.50 per hour for Boos; (d) $144.00 per hour for Bayless; (e) $162.00 per hour for Whitney; and (f) $75.00 for Tran.

###    B.    *Johnson* Factors

Once the lodestar amount is calculated, the Court may adjust the award based on the twelve *Johnson* factors.[10]  *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 380 (5th Cir. 2010); *see also McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 380-81 (5th Cir. 2011).  The Court gives special consideration to the time and labor involved, the customary fee, the amount involved and the result obtained, and the skill, experience, and reputation of the attorneys.  *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 491 n.31 (5th Cir. 2001) (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)).  The Supreme Court and the Fifth Circuit have made it clear that "the most critical factor" in this determination is the "degree of success obtained."  *Migis*, 135 F.3d at 1047 (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (internal quotation marks omitted); *Dodge v. Hunt Petroleum Corp.*, 174 F. Supp. 2d 505, 508-09 (N.D. Tex. 2001); *see also Jason D.W. by Douglas W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (noting that this factor is "particularly crucial" when a plaintiff is deemed prevailing even though he only succeeded on some of his claims).  Any adjustment to the lodestar figure must be accompanied by a concise explanation of the reasons for

---

[10]   The twelve factors are: "(1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d at 329; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

the adjustment. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (citing

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Furthermore, an adjustment to the lodestar figure

may not be awarded based on a factor that was considered in the initial lodestar calculation. *Black*

*v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

Capps does not request an adjustment to the attorney's fees award based on the *Johnson*

factors. Capps's Mot. Att'y Fees 17, ECF No. 119. However, Pursuant requests a downward

adjustment in the award based on the degree of Capps's success at trial. Pursuant's Resp. 8-9, ECF

No. 121; *see also La. Power & Light Co.*, 50 F.3d at 329 (noting defendant bears the burden of

showing that reduction in the lodestar figure is warranted). Pursuant argues that Capps only

prevailed on two of his four claims and was awarded only "a fraction (roughly ten percent) of the

amount requested." *See* Pursuant's Resp. 8, ECF No. 121. The Court finds that Capps achieved

monetary success at trial. *See* Order, Aug. 1, 2013, ECF No. 118 (citing 42 U.S.C. § 1981a(b)(3))

(stating that Capps was entitled to the statutory maximum of $100,000 for compensatory and

punitive damages); Order, July 30, 2013, ECF No. 114 (awarding $131,254.64 in front pay damages

after jury awarded him $70,000 in back pay, $25,000 in compensatory damages, and $100,000 in

punitive damages); *see also Migis*, 135 F.3d at 1048 (citing *Farrar v. Hobby*, 506 U.S. 103, 114

(1992)) (noting Supreme Court has found that the "primary consideration" in fixing fees is

applicant's monetary success compared to the amount sought). *But see Black*, 732 F.3d at 503

(finding district court would abuse its discretion by reducing attorney's fee award "solely on the basis

of the amount of damages obtained"); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th

Cir. 2006) (stating attorney's failure to obtain "every dollar sought . . . does not automatically mean

that the modified lodestar amount should be reduced"); *Singer v. City of Waco, Tex.*, 324 F.3d 813,

18

829-30 (5th Cir. 2003) (noting damages award is one factor district court may consider but "this factor alone should not lead the district court to reduce a fee award").

The Court also finds that Capps obtained a high degree of success at trial by prevailing on his claims that Pursuant suspended and terminated him because of protected activity. *See* Jury Charge 8-9, ECF No. 97; *see also Saizan*, 448 F.3d at 801 (finding plaintiffs achieved limited success because settlement agreement did not contain admission of liability, they were not awarded overtime compensation, they did not convince the jury that defendants willfully violated the law, and the court did not order defendants to pay liquidated damages in Fair Labor Standards Act case); *Jason D.W.*, 158 F.3d at 210 (finding district court did not err in reducing attorney's fees based on plaintiff's limited success in prevailing on only three claims out of nineteen in Individuals with Disabilities Education Act case); *Migis*, 135 F.3d at 1048 (reversing award of attorney's fees where plaintiff sought over twenty-six times the damages actually awarded and requested attorney's fee award over six and one-half times the amount of damages awarded); *Dodge*, 174 F. Supp. 2d at 507-09 (noting plaintiff achieved "limited or marginal success" because the jury awarded no damages and only awarded backpay in Title VII case). Accordingly, the Court does not find that a reduction is appropriate based on the degree of success obtained at trial.

The Court also finds that a reduction for the time and labor involved and the complexity of the case is not warranted. *See* Pursuant's Resp. 8-10, ECF No. 121. Pursuant argues that Capps's legal team's estimate that their costs would be around $170,000 is evidence that the case did not involve extensive time and labor. Pursuant's Resp. 9, ECF No. 121. However, the Court is not persuaded that an estimate of fees before trial is sufficient evidence to warrant a reduction. Pursuant also argues that a reduction is appropriate because the case involved only a single claim for

retaliation under Title VII and because of Capps's legal teams' skill, experience, and reputation. *Id.* at 9-10. The Court also does not find that these factors warrant a reduction, and notes that these factors were considered in calculating the lodestar figure. *See Black*, 732 F.3d at 502 (citing *Saizan*, 448 F.3d at 800) ("The lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar."). Accordingly, the Court will not adjust the lodestar figure based on the *Johnson* factors.

### C.    Calculation

Based on the analysis provided above, Capps's legal team is entitled to:

| Attorney or Paralegal | Adjusted Hours | Adjusted Hourly Rate | Total |
|---|---|---|---|
| Jeter | 654.20 | $301.50 per hour | $197,241.30 |
| Donheiser | 65.20 | $391.50 per hour | $25,525.80 |
| Boos | 107.80 | $193.50 per hour | $20,859.30 |
| Bayless | 166.70 | $144.00 per hour | $24,004.80 |
| Whitney | .60 | $162.00 per hour | $97.20 |
| Tran | 16.10 | $75.00 per hour | $1,207.50 |
| | | **Total** | **$268,935.90** |

Therefore, the total amount of fees before the billing judgment reduction is $268,935.90. After the 5% reduction for billing judgment, the total amount of fees owed by Pursuant is $255,489.10.[11]

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED** that Capps be awarded attorney's fees totaling

---

[11] Capps noted that under Federal Rule of Civil Procedure 54(d), he should be allowed his costs. Capps's Mot. Att'y Fees 18, ECF No. 119. Capps stated that he would file a bill of costs in a form approved by the clerk of court. *Id.*

**$255,489.10**.

**SO ORDERED** on this **18th day** of **November, 2013**.

_____

**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**